UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

COUSINS SUBS SYSTEMS, INC.,

                    Plaintiff and
                    Counterclaim Defendant

v.                                 Case No. 09-C-00336

BETTER SUBS DEVELOPMENT, INC.,
BETTER SUBS RESTAURANTS, LLC,
JAMES B. RAILING,
KAREN E. RAILING, and
SHANTEL E. VAUGHN,

                    Defendants and
                    Counterclaim Plaintiffs

v.

WILLAM F. SPECHT,
ESTATE OF JAMES F. SHEPPARD,
DONALD A. MORELLO, and
MORELLO FRANCHISE DEVELOPMENT CO., INC.

                    Counterclaim Defendants

## ANSWER, AFFIRMATIVE DEFENSES,
## COUNTERCLAIM, AND JURY DEMAND

BETTER SUBS RESTAURANTS, LLC ("Better Subs"), BETTER SUBS

DEVELOPMENT, INC. ("Better Development"), JAMES B. RAILING, KAREN E.

RAILING and SHANTEL E. VAUGHN (collectively "Railing/Vaughn") by their

attorneys Stephen E. Kravit and Mark M. Leitner of Kravit, Hovel & Krawczyk, S.C.

respond as follows to plaintiff's complaint:

1.     Lack information to sufficient to form a belief as to the number of the allegations of Paragraph 1, and therefore deny them.

2.     Admit.

3.     Admit.

4.     Admit.

5.     Admit.

6.     Admit.

7.     The allegations of Paragraph 7 constitute legal conclusions to which no response is required; to the extent a response is required, admit.

8.     The allegations of Paragraph 8 constitute legal conclusions to which no response is required; to the extent a response is required, admit; further answering, state that the agreements referenced in Paragraph 8 speak for themselves, and any and all allegations of Paragraph 8 inconsistent therewith.

9.     Deny that the Columbus Franchise Agreement was entered into on September 14, 2006; with respect to the remaining allegations of Paragraph 9, state that the Columbus Franchise Agreement and any associated documents speak for themselves, and deny all allegations of Paragraph 9 inconsistent therewith.

10.    State that the ADA and any associated documents speak for themselves and deny all allegations of Paragraph 10 inconsistent therewith.

11.    State that the Note speaks for itself and deny all allegations of Paragraph 11 inconsistent therewith.

12. State that the Scottsburg Franchise Agreement and any associated documents speak for themselves and deny all allegations of Paragraph 12 inconsistent therewith.

13. State that the Columbus Franchise Agreement and the Scottsburg Franchise Agreement speak for themselves and deny all allegations of Paragraph 13 inconsistent therewith.

14. Deny.

15. Admits that the Scottsburg location was closed in September 2008; deny the remaining allegations of Paragraph 15.

16. Admit that the Columbus store was closed in October 2008; deny the remaining allegations of Paragraph 16.

17. Admit that Cousins purported to terminate the ADA on or about October 15, 2008; deny the remaining allegations of Paragraph 17.

18. Deny.

19. Deny.

20. Deny.

21. Defendants reallege their responses to Paragraphs 1-20 as if set forth in full.

22. Deny.

23. Deny.

24. Defendants reallege their responses to Paragraphs 1-23 as if set forth in full.

3

25. Deny.

26. Deny.

27. Defendants reallege their responses to Paragraphs 1-26 as if set forth in full.

28. Deny.

29. Deny.

30. Defendants reallege their responses to Paragraphs 1-29 as if set forth in full.

31. Deny.

32. Deny.

33. Defendants reallege their responses to Paragraphs 1-32 as if set forth in full.

34. Deny.

35. Deny.

36. Defendants reallege their responses to Paragraphs 1-35 as if set forth in full.

37. Deny.

38. Deny.

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims are barred by its prior material breach of the agreements alleged in the complaint.

2.      Plaintiff's claims are barred because the agreements upon which those claims rest are invalid because they were induced by fraud and/or misrepresentation.

3.      Plaintiff's claims are barred because it violated the duty of good faith and fair dealing implied in every contract.

4.      Plaintiff is estopped from asserting the claims in the complaint because any damages alleged breaches of any alleged agreements were proximately caused by plaintiff's own conduct.

5.      Plaintiff's alleged damages, if any, were proximately caused by its own conduct and/or by the conduct of its agents and representatives.

6.      Plaintiff may have failed to mitigate its alleged damages, if any.

7.      Provisions of the agreements alleged in plaintiff's complaint are void because they are procedurally unconscionable, substantively inconscionable, or both.

8.      Defendants reserve the right to amend these affirmative defenses as discovery continues.

## COUNTERCLAIM

Counter-Plaintiffs, BETTER SUBS RESTAURANTS, LLC ("Better Subs"), BETTER SUBS DEVELOPMENT, INC. ("Better Development"), JAMES B. RAILING, KAREN E. RAILING and SHANTEL E. VAUGHN (collectively "Railing/Vaughn") by their attorneys Stephen E. Kravit and Mark M. Leitner of Kravit, Hovel & Krawczyk, S.C. allege as follows for their Counterclaim against COUSINS SUBS SYSTEMS, INC. ("Cousins"), WILLIAM F. SPECHT ("Specht"), ESTATE OF JAMES F. SHEPPARD ("Sheppard"), DONALD A. MORELLO

("Morello") and MORELLO FRANCHISE DEVELOPMENT CO., INC. ("Morello Development"):

## PARTIES

1.    Better Subs is an Indiana limited liability company with its principal place of business in Indianapolis, Indiana

2.    Better Development is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

3.    James B. Railing and Karen E. Railing are citizens of Indiana and each reside in Indianapolis, Indiana.  Shantel E. Vaughn is a citizen of Indiana and resides in Austin, Indiana.

4.    The members of Better Subs are James B. Railing and Karen E. Railing and Shantel E. Vaughn.

5.    James B. Railing is the sole shareholder of Better Development.

6.    Railing/Vaughn, by virtue of their membership interests in Better Subs, and James B. Railing, by virtue of his share ownership of Better Development, support the allegations set forth in this Counterclaim.

7.    Cousins is a Wisconsin corporation with its principal place of business in Menomonee Falls, Wisconsin.

8.    Specht is a citizen of Wisconsin and resides in Menomonee Falls, Wisconsin.

9.    James F. Sheppard was formerly a citizen of Wisconsin and formerly resided in Hartford, Wisconsin.  James F. Sheppard died on July 2, 2007.  The

Estate of James F. Sheppard was open on July 13, 2007, and is filed and pending in the State of Wisconsin in the Washington County Circuit Court under Case No. 2007-IN000080.

10. Morello is a citizen of Wisconsin and resides in Middleton, Wisconsin.

11. Morello Development is a Wisconsin corporation with its principal place of business in Middleton, Wisconsin.

## JURISDICTION AND VENUE

12. The Court has original subject matter jurisdiction of this counterclaim pursuant to 28 U.S.C. § 1332, because this is a civil action between citizens of different States, and wherein the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Alternatively, this Court also has supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because this action is founded solely on diversity of citizenship and a substantial part of the events or omissions giving rise to the claims which are asserted, including the property which is the subject of the action, occurred in this judicial district.

## GENERAL ALLEGATIONS

14. Cousins Submarines, Inc. owns the registered trademark and trade name "Cousins Subs." Cousins Submarines, Inc. has perpetually licensed Cousins to use and sublicenses others to use such trademark and trade name. Using such trade name and the associated merchandising concepts therein, Cousins licenses and

franchises various persons throughout the United States, including Better Subs, to use such trademark and trade name and merchandising concepts in the operation of Cousins Subs restaurants.

15.     Better Subs and Cousins entered into a contract (the "Columbus Franchise Agreement") whereby Cousins granted to Better Subs a franchise to operate a Cousins Subs restaurant in Columbus, Indiana. Such Columbus Franchise Agreement is dated September 14, 2006, but was not executed by Railing/Vaughn and Better Subs prior to September 20, 2006.

16.     Better Subs, in consideration of the Columbus Franchise Agreement, paid Cousins $20,000.00 (for the Columbus, Indiana, location only) together with future payments from time to time during the term of said Franchise Agreement as Continuing Service Fees and contributions to the Cousins Subs Advertising and Development Fund.

17.     On or about November 14, 2006, Better Development and Cousins entered into a contract (the "Area Development Agreement") whereby Cousins granted to Better Development the right to develop a specified number of franchised restaurant locations within a defined area in Indiana.

18.     Better Development, in consideration of the Area Development Agreement, paid Cousins $40,000.00, together with an executed Promissory Note payable to Cousins for an additional amount of $40,000.00.

19.     Before Railing/Vaughn and Better Subs executed the Columbus Franchise Agreement, Cousins engaged in a program of advertising directed to the

general public, including the Counterclaim Plaintiffs, which was intended to induce members of the public to purchase its franchises.

20.    As a result of such advertising and induced by such advertising, Railing/Vaughn made inquiries of Cousins concerning the franchises which were offered for sale, and in response to such inquiries, Cousins furnished to Railing/Vaughn its Uniform Franchise Offering Circular (UFOC) in which Cousins described and made certain representations concerning its franchises.

21.    Morello acted as a Selling Agent for Cousins in inducing Railing/Vaughn and Better Subs to enter into the Columbus Franchise Agreement.

22.    Morello, at all times, acted within the scope of the agency with Cousins, and Morello made statements and representations to Railing/Vaughn and Better Subs concerning the franchise which Cousins was offering for sale, which is set forth, but not limited to, with specificity elsewhere in this Counterclaim.

23.    Cousins paid compensation and fees to Morello as the result the Columbus Franchise Agreement entered into by Railing/Vaughn and Better Subs.

24.    Morello acted as a Selling Agent for Cousins in inducing Railing/Vaughn and Better Development to enter into the Area Development Agreement.

25.    Morello, at all times, acted within the scope of the agency with Cousins, and Morello made statements and representations to Railing/Vaughn and Better Development concerning the area development opportunities which Cousins

was offering for sale, which is set forth, but not limited to, with specificity elsewhere in this Counterclaim.

26.    Cousins paid compensation and fees to Morello as the result the Area Development Agreement entered into by Railing/Vaughn and Better Development.

27.    Morello and Cousins did not disclose to Railing/Vaughn and Better Subs and Better Development the relationship between Morello and Cousins, and the fact that Morello was acting as a Selling Agent on behalf of Cousins, and that Morello would receive compensation from Cousins as the result of the Columbus Franchise Agreement and the Area Development Agreement entered into by Railing/Vaughn and Better Subs and Better Development.

28.    In order to induce Railing/Vaughn and Better Subs to purchase a franchise, and in order to induce Railing/Vaughn and Better Development to purchase rights for an area development, Cousins, acting through its agents and employees as specifically identified herein, including Morello, made the following false and fraudulent statements and/or omissions with the intent to deceive Railing/Vaughn, Better Subs and Better Development into executing the Columbus Franchise Agreement and the Area Development Agreement and paying fees to Cousins:

> (a)    During a tour of stores on August 23, 2006, Patrick M. McCabe ("McCabe") stated to James B. Railing ("Railing") and to Karen E. Railing and Shantel E. Vaughn the annual sales revenue of selected Cousins Subs restaurants at N96 W15630 County Line

Road, Germantown, WI (annual sales of $1,050,000); 8538 West Brown Deer Road, Milwaukee, WI (annual sales of $470,000); W156 N5530 Pilgrim Road, Menomonee Falls, WI (annual sales of $550,000); N79 W14727 Appleton Avenue, Menomonee Falls, WI (annual sales of $950,000); 3815 North Brookfield Road, Brookfield, WI (annual sales of $450,000); 12325 West Burleigh Street, Wauwatosa, WI (annual sales of $975,000); 853 North Mayfair Road, Wauwatosa, WI (annual sales of $775,000); 5191 West Brown Deer Road, Brown Deer, WI (annual sales of $900,000);

(b)     On or about August 29, 2006, in response to questions from Railing regarding two previously closed Cousins Subs restaurants in Indianapolis, Indiana, Kerry Espich ("Espich") stated that such stores were profitable and the closure of such stores was not related to insufficient or poor revenues;

(c)     On or about August 29, 2006, Espich stated that Railing/Vaughn should not be concerned about the two previous closed Cousins Subs restaurants in Indianapolis and that Railing/Vaughn can still anticipate a profitable and successful business as a Cousins Subs franchisee and as an area developer;

(d)     On or about August 29, 2006 and August 30, 2006, in response to questions from Railing about the sales and performance of a

Cousins Subs restaurant in Mt. Vernon, Indiana, McCabe and Espich stated that such store was profitable and had been profitable since it opened nearly 15 months before, and McCabe and Espich further stated such store had sufficient sales to sustain a viable and profitable Cousins Subs business;

(e)     On or about August 29, 2006 and August 30, 2006, in response to questions from Railing about the site selection of the Cousins Subs restaurant in Mt. Vernon, Indiana, McCabe and Espich stated that Cousins is very experienced and knowledgeable in the site selection process, and McCabe and Espich further stated that the franchisee owner of the Mt. Vernon store would have had higher sales if he had relied on the recommendations of McCabe and Cousins to build his store in a different location;

(f)     On or about August 29, 2006 and August 30, 2006, in response to questions from Railing about the operation of the Cousins Subs restaurant in Mt. Vernon, Indiana, McCabe and Espich stated that Railing could rely on the profitable experience of the Mt. Vernon store in deciding to become a franchisee in Indiana;

(g)     On or about August 28, 2006, and August 29, 2006 and August 30, 2006, in response to detailed questions from Railing about store level financials of a new Cousins Subs restaurant in Indiana, Morello stated that projected annual gross revenue of

$425,000 is reasonable and realistic, and Morello further stated that Railing may anticipate and rely on such projected revenue, including annual adjusted gross revenue of $382,500, in determining his projected earnings for a new Cousins Subs restaurant in Indiana;

(h)     On or about August 28, 2006, and August 30, 2006, in response to questions from Railing about projected income and revenue as an area developer, Morello stated that each newly opened Cousins Subs restaurant in Indiana will generate sales of not less than $400,000 per store per year within one year of the store's opening, and that Railing will receive, based on a 3% royalty fee to be paid to Railing, the sum of not less than $1,000 per store per month;

(i)     On or about August 29, 2006, in response to questions from Railing about projected income and revenue as an area developer, Espich and John W. Campbell ("Campbell") stated that Railing should rely on the statements of Morello with regard to income which he will earn as an area developer in Indiana;

(j)     On or about September 4, 2006, in response to additional questions from Railing about the pro-forma and store level financials of a new Cousins Subs restaurant in Indiana, Morello

stated that Railing may continue to rely on projected annual gross revenue of $425,000;

(k)     On or about September 15, 2006, in response to detailed questions from Railing about store level financials of a new Cousins Subs restaurant in Indiana, and in comparing the revenue and expenses of prospective store locations, McCabe and Campbell stated that Railing should consult with Morello and that Railing can rely on the statements of Morello with regard to projected store revenue and projected store income;

(l)     On or about September 15, 2006 and September 16, 2006, in response to detailed questions from Railing about store level financials of a new Cousins Subs restaurant in Indiana, and in comparing the revenue and expenses of prospective store locations, Morello stated that it is reasonable for the new store at the approved location in Columbus, Indiana to achieve annual adjusted gross revenue of $462,500 within the first year and that Railing can rely on such projected revenue in his financial analysis;

(m)     On or about September 15, 2006 and September 18, 2006, in response to communication from Railing expressing concerns about the demographic study and viability and costs of the approved site in Columbus, Indiana, McCabe stated that he had

completed a thorough study and review of the Columbus site and that he would not have selected and approved the site unless he was satisfied, based on his experience and expertise, that a new store at that site would enjoy adequate sales volume and be profitable; and

(n)     On or about September 18, 2006 and September 19, 2006, in recommending to Railing that he should develop a new Cousins Subs restaurant at the approved location in Columbus, Indiana, Morello, McCabe and Campbell stated that based on their financial analysis and the demographic study of the site, the new store in Columbus will be profitable, and that Railing will realize added profits by developing and opening a new store location in Columbus immediately.

29.     In response to a request from Railing on August 29, 2006 and on August 30, 2006, to be furnished with additional annual sales revenue information of other individual Cousins Subs restaurants, Cousins refused, and Cousins informed Railing that Cousins would not provide sales revenue information of any specific stores with the exception of those selected stores that were included in the tour on August 23, 2006.

30.     When Railing presented and submitted projected store level financial analysis to Cousins on August 30, 2006 and on September 15, 2006, Cousins refused to respond to questions from Railing regarding the accuracy and reliability of such

financial analysis, and such failure and refusal to respond by Cousins constituted further misrepresentation and additional omissions of fact which were intended to deceive, and did deceive, Railing/Vaughn and Better Subs and Better Development.

31.     Cousins selected and approved the location for the Cousins Subs restaurant in Columbus, Indiana, and Cousins assured Railing/Vaughn and Better Subs that it had used site selection expertise and knowledge to perform a complete and thorough review and demographic study of the location in support of its conclusion that the location would achieve the levels of gross sales utilized by Railing/Vaughn and Better Subs in their financial analysis and which would result in a profitable operation.

32.     Railing/Vaughn and Better Subs placed their complete faith and trust and confidence in Cousins and Railing/Vaughn and Better Subs relied completely on the continuing advice and recommendations of Cousins to protect their interests and investment in the Cousins Subs restaurant location in Columbus, Indiana.

33.     Railing/Vaughn and Better Subs placed their complete faith and trust and confidence in Morello, as Cousins' Selling Agent, and Railing/Vaughn and Better Subs relied completely on the continuing advice and recommendations of Morello to protect their interests and investment in the Cousins Subs restaurant location in Columbus, Indiana.

34.     After Better Subs developed, constructed and opened the Cousins Subs restaurant location in Columbus, Indiana, based entirely on the advice and recommendations of Cousins and Morello, Better Subs did not achieve the levels of

gross sales as assured by Cousins and Morello and as a result, Better Subs incurred substantial losses.

35. Beginning with the opening of the Cousins Subs restaurant location in Columbus, Indiana, on December 19, 2006, and continuing through May 2008, Cousins assured Railing/Vaughn and Better Subs that its operation in Columbus, Indiana, would be profitable.

36. On April 11, 2007, Specht, Campbell, McCabe and Lawrence J. Weissman ("Weissman") met with Railing in Columbus, Indiana, to discuss the lack of profitability and insufficient sales revenue in the Cousins Subs restaurant in Columbus and to discuss the prospect of closing the existing store and reopening the store in a different location in Columbus, and Specht stated and informed Railing that his existing store in Columbus was a "model" store, and Specht assured Railing that he approved the site, and Specht advised and instructed Railing to remain at the existing location and sales will improve and the store will be profitable.

37. Better Subs relied on the further continuing advice and recommendations of Cousins, including without limitation Morello, in the continued operation of the Cousins Subs restaurant location in Columbus, Indiana, and Better Subs made additional financial investments, including remodeling, in the store location in direct reliance on the advice and recommendations of Cousins and Morello.

38. On November 26, 2007, Railing met with Cousins and was advised and instructed by John A. Pryor ("Pryor") and Campbell and Morello that Better Subs

should remodel the Cousins Subs store in Columbus, Indiana, by installing a grill and fryer at a cost in excess of $20,000, and that such remodeling would be the basis for a renewed marketing campaign which would result in significantly higher sales revenue and store profitability.

39.     Railing/Vaughn and Better Subs made disclosures of their financial condition and informed Cousins that Railing/Vaughn and Better Subs were exhausting all of their financial resources and if Railing/Vaughn and Better Subs continued to operate the store in Columbus, Indiana, then substantially all of their assets would be invested therein and they could not withstand continuing losses.

40.     Even knowing Railing/Vaughn and Better Subs were exhausting all of their financial resources as the result of significant and continuing losses in the Columbus, Indiana, location, Cousins encouraged and urged Railing/Vaughn and Better Subs to continue to operate the store location in Columbus, Indiana, and urged Railing/Vaughn and Better Subs to continue to make additional financial investments in the store location in Columbus, Indiana.

41.     At all times Cousins had knowledge concerning the matters alleged herein far superior to that possessed by Railing/Vaughn and Better Subs and Better Development and Cousins acted from a position of greater economic and superior bargaining power.

42.     It was not until after the execution of the Columbus Franchise Agreement and after the execution of the Area Development Agreement and after the payment of substantial fees and illegal profits to Cousins that Railing/Vaughn

and Better Subs and Better Development learned of the fraud that had been perpetuated by Cousins.

**FIRST CLAIM FOR RELIEF**

**INTENTIONAL MISREPRESENTATION**

43.     Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

44.     As set forth with specificity in this Counterclaim, Cousins knowingly made false statements of past and present fact to, and omitted or concealed true statements of fact from, Railing/Vaughn and Better Subs and Better Development.

45.     With regard to promises and representations made by Cousins as to future performance, Cousins had no present intention to perform.

46.     With respect to each false statement and each omission by Cousins, Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development to disclose the truth of each false statement and Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development to disclose the truth of each such omitted or concealed fact.

47.     The misrepresented facts and omissions of Cousins were material in the decision of Railing/Vaughn and Better Subs to enter into the Columbus Franchise Agreement, and the misrepresented facts and omissions were material in the decision of Railing/Vaughn and Better Development to enter into the Area Development Agreement, because a reasonable person under the circumstances

would regard the facts misrepresented and otherwise omitted as necessary in deciding to enter into such agreements.

48.     Cousins knew that Railing/Vaughn and Better Subs and Better Development would find the misrepresented and omitted facts to be necessary in deciding how to proceed, and Cousins knew that Railing/Vaughn and Better Subs and Better Development would reasonably expect disclosure of the truth of such misrepresented facts and omissions.

49.     Cousins misrepresented facts and omissions with the intent of creating a false impression of the actual facts in the mind of Railing/Vaughn and Better Subs and Better Development knowing they would not have taken the course of action they did had they been told the truth of all of the facts.

50.     The statements and omissions of Cousins and its employees, agents and representatives, including the statements and omissions of Morello, as set forth in the Counterclaim, were untrue, false, fraudulent and misleading.

51.     Cousins knew or should have known at the time it made the representations and omissions that its affirmative statements as alleged herein were false, and that its omissions or concealments were deceptive by virtue of being incomplete.

52.     Cousins made the false statements and engaged in the omissions and concealments with the intent to defraud Railing/Vaughn and Better Subs and Better Development and in order to induce them to rely on the statements, omissions and concealments.

53.     Railing/Vaughn and Better Subs and Better Development believed the false statements made to them and believed that no facts existed inconsistent with the omissions and concealments, and reasonably acted in reliance upon those beliefs to their detriment.

54.     As the direct and proximate result of their detrimental reliance on the intentional misrepresentation and fraudulent statements and omissions of Cousins, Railing/Vaughn and Better Subs and Better Development have been damaged.

## SECOND CLAIM FOR RELIEF

## STRICT LIABILITY MISREPRESENTATION

55.     Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

56.     As set forth with specificity in the Counterclaim, Cousins made representations of fact and omitted to state facts that would render representations made by it not misleading.

57.     The representations and omissions of Cousins were untrue.

58.     Cousins maintained all of the personal knowledge and understanding of the circumstances on which the representations and omissions were based.

59.     Cousins stated expressly and impliedly that it had the knowledge to make the representations that it did and had the information necessary to render its statements not misleading.

60.     Cousins held an economic interest in the sale and continued operation of the franchise of Better Subs and Cousins held an economic interest in the sale

and continued operation of the area development of Better Development, and Cousins stood to gain financially by making the representations and omissions as set forth in this Counterclaim.

61. Railing/Vaughn and Better Subs and Better Development believed the representations and omissions of Cousins to be true and Railing/Vaughn and Better Subs and Better Development reasonably relied on such representations and omissions to their detriment.

62. The representations and omissions of Cousins constituted a material inducement and Railing/Vaughn and Better Subs would not have chosen to enter into the Columbus Franchise Agreement, and Railing/Vaughn and Better Development would not have chosen to enter into the Area Development Agreement, but for these representations and omissions.

63. As the direct and proximate result of the wrongful conduct of Cousins, and as the direct and proximate result of their detrimental reliance on the misrepresentation and the fraudulent statements and omissions of Cousins, Railing/Vaughn and Better Subs and Better Development have been damaged.

## THIRD CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

64. Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

65.     As set forth with specificity in this Counterclaim, Cousins made representations of fact and omitted to state facts that would render representations made by it not misleading.

66.     The representations and omissions of Cousins were untrue, and when Cousins made the representations and omissions described herein, Cousins had no reasonable basis for believing the representations and omissions were true.

67.     With respect to each false statement and each omission by Cousins, Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development to disclose the truth of each false statement and Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development to disclose the truth of each such omitted or concealed fact.

68.     As set forth with specificity in this Counterclaim, Cousins knowingly made promises and predictions as to the future, which such promises and predictions were not made honestly or in good faith.

69.     Cousins failed to exercise ordinary care in making the representations and omissions to Railing/Vaughn and Better Subs and Better Development.

70.     Railing/Vaughn and Better Subs and Better Development believed the representations and omissions of Cousins to be true and Railing/Vaughn and Better Subs and Better Development reasonably relied on such representations and omissions to their detriment.

71.     As the direct and proximate result of the negligent conduct of Cousins, and as the direct and proximate result of the misrepresentation and fraudulent

statements and omissions of Cousins, Railing/Vaughn and Better Subs and Better Development have been damaged.

## FOURTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### COLUMBUS FRANCHISE AGREEMENT

72.    Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

73.    Better Subs and Cousins entered into the Columbus Franchise Agreement dated September 14, 2006.

74.    Better Subs performed all covenants and obligations which it owed to Cousins pursuant to the Columbus Franchise Agreement.

75.    In accordance with the terms and provisions of the Columbus Franchise Agreement, and also based on the representations of Cousins as set forth in this Counterclaim, Cousins assumed the obligation to utilize its experience and expertise in the selection of an acceptable site for the location of the Cousins Subs restaurant in Columbus, Indiana.

76.    Cousins failed to exercise the requisite standard of care and Cousins failed to perform its obligations in accordance with reasonable and acceptable industry standards in the selection of the site for the location of the Cousins Subs restaurant in Columbus, Indiana.

77.    Cousins has breached the Columbus Franchise Agreement.

78. As the direct and proximate result of the breach of the Columbus Franchise Agreement by Cousins, Better Subs and Railing/Vaughn have been damaged.

## FIFTH CLAIM FOR RELIEF

### BREACH OF CONTRACT
### AREA DEVELOPMENT AGREEMENT

79. Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

80. Better Development and Cousins entered into the Area Development Agreement dated November 14, 2006.

81. Better Development performed all covenants and obligations which it owed to Cousins pursuant to the Area Development Agreement.

82. In accordance with the terms and provisions of the Area Development Agreement, Cousins shall furnish to Better Development assistance and advice with respect to Better Development's responsibilities under such Agreement.

83. Cousins failed to perform its obligations under such Agreement and failed to provide assistance and advice as to the performance of the responsibilities of Better Development.

84. Cousins has breached the Area Development Agreement.

85. As the direct and proximate result of the breach of the Area Development Agreement by Cousins, Better Development and Railing have been damaged.

## SIXTH CLAIM FOR RELIEF

## VIOLATION OF THE WISCONSIN DECEPTIVE
## TRADE PRACTICES ACT

86.     Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

87.     The conduct and omissions described in this Counterclaim constitute a violation of Wis. Stat. § 100.18.

88.     Better Subs, Better Development, and Railing/Vaughn have been damaged as a result of the false and deceptive trade practices of Cousins including the continuing misrepresentations, deceptions and omissions described in this Counterclaim.

89.     As a result of this statutory violation, Better Subs, Better Development, and Railing/Vaughn are entitled to receive equitable relief, in such form as the Court may deem appropriate, pecuniary damages, costs, and attorney fees as prescribed by Wis. Stat. § 100.18.

## SEVENTH CLAIM FOR RELIEF

## VIOLATION OF THE WISCONSIN FRANCHISE INVESTMENT LAW

90.     Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

91.     Cousins and Morello and Morello Development and the Columbus Franchise Agreement dated September 14, 2006 and the Area Development Agreement dated November 14, 2006 are subject to the provisions of the Wisconsin Franchise Investment Law (Wis. Stat. § 553 et seq.).

26

92.     Wis. Stat. § 553.51 provides for civil liability against any person who violates Wis. Stat. § 553.41(3) (4) and (5).

93.     Any contractual provision purporting to bind Better Subs and Better Development and Railing/Vaughn to any waiver of defendants' compliance with Chapter 553 is void as a matter of law in Wisconsin.

94.     The rights and remedies available under Chapter 553 are in addition to any others that may exist at law or in equity.

95.     The misrepresentations and omissions set forth in this Counterclaim violate one or more provisions of Wis. Stat. § 553.41, including, without limitation, that Cousins and Morello and Morello Development made written and oral communications not included in the UFOCs presented to Railing/Vaughn and Better Subs and Better Development that involved untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

96.     Better Subs, Better Development and Railing/Vaughn have been damaged as a result of the conduct and omissions of Cousins and Morello and Morello Development in violation of these statutory provisions.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF WIS. STAT. § 943.20 AND WIS. STAT. § 895.446

97.     Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

98.     The wrongful acts and conduct of Cousins as alleged herein constitute a scheme and artifice to obtain money and property from Better Subs and Better Development and Railing/Vaughn by means of deceiving Better Subs and Better Development and Railing/Vaughn with false representations, and known by Cousins to be false when made by them, and with the intent to defraud Better Subs and Better Development and Railing/Vaughn in violation of Wis. Stat. § 943.20(1)(d) ("Theft").

99.     As a result of the unlawful conduct by Cousins, Better Subs and Better Development and Railing/Vaughn were defrauded, deprived of their property, and have suffered damages.

100.    Pursuant to Wis. Stat. § 895.446, Better Subs and Better Development and Railing/Vaughn are entitled to recover actual damages, the costs of investigation and litigation reasonably incurred, as well as exemplary damages of not more than three times actual damages.

## NINTH CLAIM FOR RELIEF

### VIOLATION OF THE INDIANA FRANCHISE DISCLOSURE ACT AND THE INDIANA DECEPTIVE FRANCHISE PRACTICES ACT

101.    Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

102.    Cousins and the Columbus Franchise Agreement dated September 14, 2006 and the Area Development Agreement dated November 14, 2006 are subject to the provisions of the Indiana Franchise Disclosure Act (Indiana Code 23-2-2.5-1 et

seq.) and the Indiana Deceptive Franchise Practices Act (Indiana Code 23-2-2.7-1 et seq.).

103.    Indiana Code 23-2-2.7-1(10) provides that it is unlawful for the franchise agreements entered into between Cousins and the Counterclaim Plaintiffs to contain any provision limiting litigation brought for breach of the agreements in any manner whatsoever.

104.    The misrepresentations and omissions set forth in this Counterclaim violate one or more provisions of the Indiana Franchise Disclosure Act, including, without limitation, that Cousins employed a scheme or artifice to defraud and made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and engaged in other acts which operated as a fraud and deceit upon Better Subs and Better Development and Railing/Vaughn.

105.    Better Subs, Better Development and Railing/Vaughn have been damaged as a result of the conduct and omissions of Cousins in violation of the Indiana Franchise Disclosure Act.

106.    Pursuant to Indiana Code 23-2-2.5-29, every person who materially aids or abets in an act or transaction constituting a violation of the Indiana Franchise Disclosure Act is also liable jointly and severally.

107.    William F. Specht and James F. Sheppard owned and had complete control of Cousins during the time that the acts and omissions occurred which are described in this Counterclaim.

108. Specht and James F. Sheppard had complete authority to prevent violations of statute, including the violations of the Indiana Franchise Disclosure Act.

109. Pursuant to Indiana Code 23-2-2.5-31, every civil action under the Indiana Franchise Disclosure Act survives the death of any person who might have been a defendant. The Estate of James F. Sheppard is named as a Counterclaim Defendant herein for the liability of the decedent, James F. Sheppard.

110. Donald A. Morello, individually, and also through Morello Franchise Development Co., Inc., specifically aided and abetted Cousins in acts and transactions which constituted violations of statute, including the violations of the Indiana Franchise Disclosure Act.

111. Cousins, Specht, Sheppard, Morello, and Morello Development are each jointly and severally liable for the actions and omissions of Cousins which are described in this Counterclaim and which constitute a violation of the Indiana Franchise Disclosure Act.

112. Pursuant to Indiana Code 23-2-2.5-28, Better Subs and Better Development and Railing/Vaughn are entitled to recover any consequential damages, interest, and reasonable attorney's fees from Cousins and from Specht, Sheppard, Morello, and Morello Development.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF INDIANA CODE 35-43-4-2 AND
### INDIANA CODE 34-24-3-1

113.    Better Subs, Better Development, and Railing/Vaughn repeat and
reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

114.    The wrongful acts and conduct of Cousins as alleged herein constitute
"Theft" as defined in Indiana Code 34-43-4-2 in that Cousins knowingly or
intentionally exerted unauthorized control over property of another person, with
the intent to deprive the other person of any part of its value or use.

115.    Cousins' control over the property of Better Subs and Better
Development and Railing/Vaughn was unauthorized in that, without limitation,
Cousins:

       (o)    Exerted control over the property of Better Subs and Better
Development and Railing/Vaughn without the consent of
Railing/Vaughn;

       (p)    Exerted control over the property of Better Subs and Better
Development and Railing/Vaughn in a manner or to an extent
other than that to which Railing/Vaughn consented;

       (q)    Created or confirmed a false impression in Better Subs and
Better Development and Railing/Vaughn;

       (r)    Failed to correct a false impression that Cousins knew was
influencing Better Subs and Better Development and
Railing/Vaughn while Cousins stood in a relationship of special

trust to Better Subs and Better Development and Railing/Vaughn; and

(s) Promised performance that Cousins knew would not be performed.

116. As a result of the unlawful conduct for Theft by Cousins under Indiana Code 34-43-4-2, Better Subs and Better Development and Railing/Vaughn suffered pecuniary losses.

117. Pursuant to Indiana Code 34-24-3-1, Better Subs and Better Development and Railing/Vaughn are entitled to bring a civil action against Cousins for an amount not to exceed three times actual damages, costs of the action, reasonable attorney's fees, direct and indirect costs for travel and compensation for time used to file papers and attend court proceedings, and for other reasonable costs of collection.

## ELEVENTH CLAIM FOR RELIEF

## RESCISSION OF CONTRACT

118. Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

119. Better Subs and Better Development and Railing/Vaughn would not have contracted with Cousins if they had known the truth of the false, fraudulent and misleading statements and omissions made by Cousins and its employees, agents and representatives.

120. On the basis of such fraud and misrepresentation, the Columbus Franchise Agreement dated September 14, 2006, and the Area Development Agreement dated November 14, 2006, are voidable and Better Subs and Better Development and Railing/Vaughn are entitled to rescission of such agreements.

121. Contrary to the requirements of the Indiana Franchise Disclosure Act, Cousins failed to register its franchise and its offer to sale with the Indiana Securities Commissioner before offering and selling such franchise to Better Subs and Better Development and Railing/Vaughn.

122. On the basis of such failure to register, Better Subs and Better Development and Railing/Vaughn are entitled to rescission of the Columbus Franchise Agreement dated September 14, 2006 and rescission of the Area Development Agreement dated November 14, 2006.

## TWELFTH CLAIM FOR RELIEF

### NEGLIGENCE

123. Better Subs, Better Development, and Railing/Vaughn repeat and reallege each of the foregoing paragraphs of this Counterclaim as if set forth in full.

124. William F. Specht and James F. Sheppard owned and had complete control of Cousins during the time that the acts and omissions occurred which are described in this Counterclaim.

125. Specht and James F. Sheppard had complete authority to prevent violations of statute, including the violations of the Wisconsin Franchise Investment Law and the violations of the Indiana Franchise Disclosure Act.

126.   With respect to each violation of statute, Specht and James F. Sheppard owed a duty to Railing/Vaughn and Better Subs and Better Development to prevent such violations of statute and to prevent Cousins and its employees, agents and representatives from making the misrepresentations of material fact and omissions described herein.

127.   Specht and James F. Sheppard owed a duty to Railing/Vaughn and Better Subs and Better Development to disclose the truth of each false statement and each omitted and concealed fact made by Cousins and its employees, agents and representatives as described herein.

128.   Specht and James F. Sheppard failed to exercise ordinary care in preventing Cousins and its employees, agents and representatives from making the misrepresentations of fact and omissions to Railing/Vaughn and Better Subs and Better Development.

129.   Specht and James F. Sheppard failed to exercise ordinary care in failing to disclose the truth of each false statement and each omitted and concealed fact made by Cousins and its employees, agents and representatives to Railing/Vaughn and Better Subs and Better Development.

130.   The Estate of James F. Sheppard is named as a Counterclaim Defendant herein for the liability of the decedent, James F. Sheppard.

131.   With respect to each violation of statute, Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development not to violate such statutes.

132. Cousins owed a duty to Railing/Vaughn and Better Subs and Better Development not to make untrue statements of material facts or omit to state material facts as described herein.

133. Cousins failed to exercise ordinary care in committing violation of statutes and in making the untrue statements of material facts and omissions of material facts as described herein.

134. As the direct and proximate result of the negligent conduct of Specht and Sheppard and Cousins, Railing/Vaughn and Better Subs and Better Development have been damaged.

WHEREFORE, Better Subs Restaurants, LLC, Better Subs Development, Inc., James B. Railing, Karen E. Railing, and Shantel E. Vaughn respectfully demand judgment, jointly and severally, against Cousins Subs Systems, Inc., William F. Specht, Estate of James F. Sheppard, Donald A. Morello and Morello Franchise Development Co., Inc. in amounts to be determined more precisely at trial, but which will include the following:

    (a)    Dismissal of the plaintiff's complaint with prejudice and upon its merits;

    (a)    Damages in an amount to be proven at trial, together with additional incurred interest expense;

    (b)    Attorney fees in an amount determined by the Court to be reasonable;

(c)   Damages pursuant to Wisconsin statute not to exceed three times the amount of the actual damages;

(d)   Damages pursuant to Indiana statute not to exceed three times the amount of the actual damages;

(e)   Costs and expenses of investigation and litigation, including direct and indirect costs for travel and compensation for time used to file papers and attend court proceedings, and for other reasonable costs of collection;

(f)   Legal interest as provided by law; and

(g)   Such other and further relief as the Court considers just and proper.

## DEFENDANTS-COUNTERCLAIM PLAINTIFFS DEMAND TRIAL BY JURY.

KRAVIT, HOVEL & KRAWCZYK S.C.

June 1, 2009
Date

/s/ Stephen E. Kravit
Stephen E. Kravit
Mark M. Leitner
Aaron H. Aizenberg
Attorneys for Defendants/Counterclaim Plaintiffs
Better Subs Development, Inc.,
Better Subs Restaurants, LLC,
James B. Railing,
Karen E. Railing, and
Shantel E. Vaughn

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson - Fifth Floor
Milwaukee, WI 53202
(414) 271-7100 - Telephone
(414) 271-8135 - Facsimile
kravit@kravitlaw.com